UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| National PFAS Contamination Coalition, Sierra Club, and Union of Concerned Scientists,<br><br>Plaintiffs,<br>v.<br><br>U.S. Environmental Protection Agency, and Michael S. Regan, in his official capacity as Administrator, U.S. Environmental Protection Agency,<br><br>Defendants. | Case No. 1:22-cv-132-JDB |

### DEFENDANTS' MOTION TO TEMPORARILY STAY LITIGATION PENDING COMPLETION OF RULEMAKING

Defendants, the United States Environmental Protection Agency ("EPA") and Michael Regan, in his official capacity as Administrator of the United States Environmental Protection Agency, respectfully move this Court to temporarily stay the litigation pending EPA's completion of its rulemaking process, which is expected to be completed by November 30, 2023 and, if finalized as expected, will obviate Plaintiffs' claims. With the requested stay, Defendants will file status reports every 90 days.

### BACKGROUND

Section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 ("EPCRA"), 42 U.S.C. § 11023 ("Section 313"), requires, among other things, submitting information related to the release of toxic chemicals to EPA to inform the public and communities surrounding covered facilities about such releases. 42 U.S.C. § 11023 (a), (h). Covered facilities that manufacture, process, or otherwise use a listed toxic chemical in a quantity that exceeds the

reporting threshold generally must complete and submit a toxic chemical release form, which is then compiled in the national Toxics Release Inventory ("TRI"). *Id.* § 11023(a), (j). The default reporting threshold is 25,000 or 10,000 pounds, depending on whether the chemical is manufactured, processed, or otherwise used. *Id.* § 11023(f). Those that supply products containing a listed toxic chemical to others must provide notice that the product contains such listed toxic chemical ("Supplier Notification"). 40 C.F.R. § 372.45.

In implementing Section 313, EPA promulgated, as relevant here, two burden reduction tools. First, in calculating the reporting threshold, a facility owner or operator need not consider chemicals that are only present at a *de minimis* concentration in a mixture ("*De Minimis* Exemption"). *Id.* § 372.38(a). This exemption also applies to the Supplier Notification requirement. *Id.* § 372.45(d)(1). Second, if a facility releases 500 pounds or less of a listed toxic chemical annually, the facility owner or operator may apply an alternate reporting threshold of 1,000,000 pounds and submit an alternate threshold certification in lieu of the lengthier toxic chemical release form ("Alternate Threshold"). *Id.* § 372.27(a), (b).

EPA limited the availability of these burden reduction tools for certain listed toxic chemicals that EPA has determined "have the potential to cause serious human health and environmental effects" at low concentrations ("Chemicals of Special Concern"). Reporting Thresholds for Certain Persistent Bioaccumulative Toxic Chemicals 64 Fed. Reg 58666, 58668 (Oct. 29, 1999) (codified at 40 C.F.R. § 372.28). Of the tools identified above, only the *De Minimis* Exemption for the Supplier Notification requirement is available for such chemicals. 40 C.F.R. §§ 372.27(e), 372.38(a)(2).

In 2019, Congress amended Section 313 with the National Defense Authorization Act for Fiscal Year 2020 ("2020 NDAA"). The 2020 NDAA automatically added certain per- and

polyfluoroalkyl substances ("PFAS") as listed toxic chemicals subject to Section 313's reporting requirements on January 1, 2020, and continues to automatically add certain PFAS each year, following the occurrence of certain qualifying triggers specified in the 2020 NDAA (the "statutorily listed PFAS"). 15 U.S.C. § 8921(b)(1), (c). In so doing, Congress expressly declared that the default reporting threshold of 25,000 or 10,000 pounds from Section 313, 42 U.S.C. § 11023(f)(1), would not apply; instead, it set the reporting threshold for such PFAS at 100 pounds. *Id.* § 8921(b)(2)(A), (c)(2)(A) ("[N]otwithstanding subsection (f)(1) of section 11023 of title 42, the threshold for reporting under such section 11023 of title 42 the [statutorily listed PFAS] is 100 pounds.").

To comply with the express language of the 2020 NDAA, EPA, as relevant here, (1) updated the list of toxic chemicals that must be reported to the TRI to include the 175 statutorily listed PFAS; and (2) added 40 C.F.R. § 372.29 to reflect the fact that Congress set the reporting threshold for these 175 PFAS at 100 pounds. Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances; Toxic Chemical Release Reporting, 85 Fed. Reg. 37354, 37355 (June 22, 2020) ("2020 Rule"); Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances (PFAS) to the Toxics Release Inventory Beginning With Reporting Year 2021, 86 Fed. Reg. 29698, 29700 (June 3, 2021) ("2021 Rule" and with the 2020 Rule, the "PFAS Rules"). As EPA took these actions to comply with a nondiscretionary congressional mandate, EPA determined that there was good cause for making these rules final without prior proposal and opportunity for comment, as generally required under the Administrative Procedure Act (the "APA"). 2020 Rule at 37356 (citing the APA, 5 U.S.C. § 553(b)(B)); 2021 Rule at 29700 (same).

On January 20, 2022, Plaintiffs filed a complaint, alleging that EPA, in promulgating the PFAS Rules, violated the 2020 NDAA and EPCRA by adding the 175 statutorily listed PFAS to the Section 313 reporting regulations in a manner that allows permitting facility owners and operators of statutorily listed PFAS to apply the *De Minimis* Exemption and the Alternate Threshold.  Compl. ¶¶ 66–81, ECF No. 1.  Plaintiffs also allege that EPA violated the APA by promulgating the PFAS Rules without undergoing notice-and-comment rulemaking.  *Id.* ¶¶ 82–87.

On April 5, 2022, EPA successfully moved without opposition to stay the litigation until September 30, 2022, so that it could focus its limited resources on a rulemaking process, the outcome of which could obviate the dispute here.  ECF No. 12; Minute Order, Apr. 5, 2022.  On August 16, 2022, the Office of Management and Budget began reviewing EPA's proposed rule that would (1) classify certain PFAS (including all the statutorily listed PFAS at issue in this case) as Chemicals of Special Concern, thereby eliminating the availability of the *De Minimis* Exemption for the reporting threshold and the Alternate Threshold, and (2) amend the regulations to eliminate the use of the *De Minimis* Exemption from the Supplier Notification requirement for all Chemicals of Special Concern.  *See* Declaration of David Turk ("Turk Decl.") ¶ 6 (attached as Exhibit 1); Joint Status Report, ECF No. 13.  EPA expects to publish its notice of proposed rulemaking in December of 2022 and issue its final rule by November 30, 2023, which will apply for the 2024 reporting year.  Turk Decl. ¶ 7.  The parties have not been able to agree on whether the Court should extend the stay in this litigation.  ECF No. 13.  As such, in accordance with the Court's briefing schedule, ECF No. 16, EPA submits this motion and attaches a declaration in support.

**LEGAL STANDARD**

A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In exercising its judgment, the court must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (internal quotation marks and citation omitted). Thus, to determine whether to issue a stay, the court considers (1) harm to the nonmoving party if a stay does issue; (2) the harm to the moving party if a stay does not issue; and (3) judicial economy. *Id.* The movant bears the burden of establishing its need. *Clinton*, 520 U.S. at 708.

**ARGUMENT**

Defendants seek a stay to complete a rulemaking that, if finalized as expected, will provide Plaintiffs everything they seek to achieve through this litigation. Staying this case will not impose hardship on Plaintiffs, will free EPA to focus its limited resources on that rulemaking, and will serve judicial economy by avoiding litigation of issues that may well be rendered moot.

**I.     PLAINTIFFS WILL SUFFER NO HARDSHIP FROM A STAY**

In evaluating whether a stay will harm a non-moving party, a court considers whether there is "a fair possibility" that nonmovants will suffer harm if the case is stayed. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Plaintiffs allege that the PFAS Rules are unlawful and arbitrary because reporting exemptions remain available for the statutorily listed PFAS. *See* Compl. ¶¶ 74, 80-81, 84. EPA, however, is already developing a rule that EPA anticipates will modify the reporting requirements for the statutorily listed PFAS by eliminating the exemptions that Plaintiffs object to in this litigation and will take effect for the 2024 reporting year. Turk Decl. ¶¶ 6, 7, 9. EPA expects to propose this rule by December 2022 and anticipates taking final action by November

30, 2023. *Id.* ¶ 7. Given that EPA has taken concrete steps towards promulgating a rule that could moot Plaintiffs' claims, there is no "fair possibility" that Plaintiffs will suffer harm if the litigation is paused to allow EPA the opportunity to complete that process.

Proceeding with this litigation is unlikely to get Plaintiffs what they want any faster. Based on the briefing schedule for the stay motion, the earliest this litigation could resume is November 17, 2022. *See* ECF No. 16 (setting EPA's reply brief filing for November 16, 2022). That would leave this Court with about one year before EPA's anticipated November 2023 action to issue an order.[1] Considering that litigation will have just begun with no administrative records or merits briefs having been filed, that is an unlikely timeline. Indeed, this Court has held that where an agency estimated issuing a notice of proposed rulemaking in no later than six months (which is less progress than EPA has made here), it made "little sense for the Court to require the filing of the administrative record and merits briefs from both sides, and then expend resources resolving legal issues that will likely be moot around the same time as it reaches a decision." *Chinatown Serv. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, No. 21-331, 2021 WL 8316490, at *2 (D.D.C. Oct. 13, 2021).

Any argument that EPA may delay issuing its final rule until after its anticipated date is too speculative to weigh in Plaintiffs' favor. There is a fair possibility of harm to nonmovants in a request for a stay pending rulemaking when an agency (1) provides no hint that its re-examination of a contested regulation during its rulemaking process would affect the contested issues, *Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 472 (D.C. Cir. 1991); *Asylumworks v. Mayorkas*, No. 30-cv-3815, 2021 WL 2227335, at *5 (D.D.C. June 1, 2021); or (2) is "unable to predict a timeframe

---

[1] And even then, all that the Court could do under the APA is to "hold unlawful and set aside" the PFAS Rules if they are found to be arbitrary or capricious. 5 U.S.C. § 706(2). It could not, as Plaintiffs request, issue advisory opinions regarding the applicability of various reporting exemptions. *See* Compl., Section X, ¶¶ E-F.

for completion of [its] rulemaking process and therefore suggests no set duration for its proposed stay," *Garcia v. Credit One Bank, N.A.*, No. 2:18-CV-191, 2018 WL 11304605, at *2 (D. Nevada Oct. 3, 2018); *see also Asylumworks*, 2021 WL 2227335 at *5 (holding that a request for a stay pending an agency's tentative plan to engage in rulemaking that was premised on speculative administrative changes and judicial decisions was too speculative to warrant a stay).  Here, EPA has provided clear indication that its rulemaking, if finalized as expected, would resolve Plaintiffs' claims and that it intends to complete its rulemaking process by November 30, 2023, such that the final rule will apply for the 2024 reporting year.  *See* Turk Decl. ¶¶ 6, 7, 9.  And to ensure that EPA remains on track, Defendants will file status reports every 90 days during the pendency of the stay.

In sum, because EPA has provided clear indication that it plans to finalize a rule that may well address Plaintiffs' concerns before this matter could be fully litigated, there is no "fair possibility" that a stay will harm Plaintiffs.

## II.    A STAY IS NECESSARY TO PREVENT HARDSHIP TO EPA

EPA is likely to suffer hardship from proceeding with this litigation, as EPA staff who are working on the rulemaking regarding the PFAS reporting requirements are also assisting DOJ in this litigation, which concerns nuanced toxic chemical reporting requirements.  *See* Turk Decl. ¶ 5.  As the Supreme Court has explained, "[i]f a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed."  *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).  Here, requiring the small staff at EPA working on the rulemaking regarding the PFAS reporting requirements to divert their limited availability to assist in this litigation is counterproductive to

EPA's efforts to issue the final rule by November 30, 2023 and Plaintiffs' desire to quickly eliminate certain reporting exemptions for statutorily listed PFAS. *See* Turk Decl. ¶ 5 (stating that EPA's small staff that is responsible for working on this rulemaking process and implementing the final rule are assisting in this litigation, such that proceeding with this litigation will likely strain EPA's ability to expeditiously carry out its responsibilities). Consequently, the hardship to EPA—substantially diverting towards this litigation its limited resources currently working to complete the rulemaking process—weighs heavily in favor of granting this motion.

### III. A STAY WOULD SERVE JUDICIAL ECONOMY

Granting Defendants' motion would promote efficient use of the Court's resources. The court has an interest in "avoiding unnecessary litigation that would burden its docket and hamper judicial economy." *Doe v. Sipper*, 869 F. Supp. 2d 113, 117 (D.D.C. 2012) (internal quotation marks and citation omitted). As discussed above, EPA is undergoing rulemaking, which, as Plaintiffs agreed, "could obviate some or all the dispute" in this litigation. *See* EPA's Unopposed Mot. to Stay, ECF No. 12. It is widely recognized that it is more expeditious and efficient for an agency to proceed through its administrative process to address issues concerning its promulgated rules than it is to resort to the judicial process. *See B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (stating in the context of agency reconsideration that "[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts" (quoting *Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978))). Even if the final rule does not resolve all of Plaintiffs' claims, a stay of the entire case is warranted because "piecemealing claims in this litigation will waste party and judicial resources and will require duplication of efforts to resolve closely related issues on separate occasions." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D.

Cal. 2008) (granting an agency's request for a stay pending agency rulemaking because the agency's final rule may affect portions of the plaintiff's claims).

Because continuing to litigate the same issues that EPA could resolve through its rulemaking process is a waste of judicial resources, this factor heavily weighs in favor of granting a stay. *See Khadr v. Bush*, 587 F. Supp. 2d 225, 229 (D.D.C. 2008) (staying a complainant's challenge pending completion of military commission proceedings).

## CONCLUSION

A temporary stay of litigation until EPA completes its rulemaking is warranted because the three factors a court considers in deciding a stay motion all weigh heavily in favor of granting the stay. Therefore, Defendants respectfully request this Court to issue a temporary stay until November 30, 2023, with Defendants to file status reports every 90 days.

Dated: October 24, 2022

        Respectfully submitted,

        */s/ Jin Hyung Lee*
        Jin Hyung Lee
        U.S. Department of Justice
        Environment & Natural Resources Division
        Environmental Defense Section
        P.O. Box 7611
        Washington, D.C. 20044
        (202) 514-2640
        jin.hyung.lee@usdoj.gov

        *Counsel for Defendants*

## Certificate of Service

I certify that on October 24, 2022, I filed the foregoing with the Court's CMS/ECF system, which will notify each party.

                                             */s/  Jin Hyung Lee*
                                             Jin Hyung Lee

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| National PFAS Contamination Coalition, Sierra Club, and Union of Concerned Scientists,<br><br>　　　　Plaintiffs,<br>　v.<br><br>U.S. Environmental Protection Agency, and Michael S. Regan, in his official capacity as Administrator, U.S. Environmental Protection Agency,<br><br>　　　　Defendants. | Case No. 1:22-cv-132-JDB |

**[PROPOSED] ORDER**

Upon consideration of Defendants' motion to temporarily stay litigation pending completion of rulemaking, Plaintiffs' opposition to the motion, Defendants' reply, and any related declaration and exhibit, it is hereby

ORDERED that Defendants' motion is GRANTED; and it is further

ORDERED that Defendants will provide status updates every 90 days upon issuance of this order.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　JUDGE JOHN D. BATES
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: _____