# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL PFAS CONTAMINATION
COALITION, SIERRA CLUB, and UNION
OF CONCERNED SCIENTISTS,

*Plaintiffs*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and MICHAEL
REGAN, in his official capacity as
Administrator of the United States
Environmental Protection Agency,

*Defendants.*

Case No. 1:22-cv-132-JDB

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY
AND IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR EXPEDITED
CONSIDERATION OF DEFENDANTS' MOTION TO STAY**

Plaintiffs National PFAS Contamination Coalition, Sierra Club, and Union of Concerned Scientists ("Plaintiffs") oppose Defendants' motion to stay this litigation ("Motion to Stay"), ECF No. 17, and further move, unopposed, for expedited consideration of the Motion to Stay. At issue is whether Defendant U.S. Environmental Protection Agency ("EPA") can continue to shield from judicial review illegal regulations that deprive Plaintiffs and their members of much-needed information about a highly toxic group of chemicals while EPA undertakes a rulemaking that, even if finalized as EPA expects, will not address the central legal question at issue in this case. Because Plaintiffs would be harmed by a stay of the proceedings—during which they would continue to be deprived of information to which they are entitled while the core of their legal claims are left unresolved—and EPA cannot show that it would suffer hardship absent a stay, the Court should expeditiously deny EPA's request to stay this litigation. Doing so will allow this case to proceed to resolution and will allow Plaintiffs and their members to receive the information Congress intended them to have so that they can protect their families from, and advocate for stronger safeguards against, toxic chemicals.

## BACKGROUND

Per- and polyfluoroalkyl substances ("PFAS") are a large group of highly toxic, synthetic chemical substances that are linked to many serious health harms. Pls.' Compl. ¶ 1, ECF No. 1. For example, exposure to several of the well-studied and widely produced PFAS has been linked to cancer, elevated cholesterol levels, immune suppression, preeclampsia, liver and kidney damage, and endocrine disruption. *Id.* ¶ 23; *see also id.* ¶ 24. Children, infants, and the developing fetus are especially susceptible to harm from PFAS exposures, and PFAS can transfer across the placenta and appear in umbilical cord blood, exposing the developing fetus to these

1

toxic chemicals.  *Id.* ¶ 25.  Many of the adverse health effects associated with PFAS occur at very low exposure levels.  *Id.* ¶ 26.

Over a thousand PFAS chemicals have been manufactured in or imported into the United States.  *Id.* ¶ 22.  Not only are PFAS in widespread use—including in consumer products like cookware, rugs, furniture, personal care products, and food packaging, *id.* ¶ 2—but they are also extremely persistent and difficult to break down or remediate, *id.* ¶ 27.  And many PFAS have bioaccumulative qualities, meaning that they can build up in living organisms over time.  *Id.* The toxicity, persistence, and bioaccumulative qualities of many PFAS mean that many PFAS fall within a class of chemicals known as "persistent, bioaccumulative, and toxic" or "PBT" chemicals.  *Id.*

PFAS—and exposures to them—are so ubiquitous that more than 98% of people living in the United States have detectable levels of PFAS in their bodies.  *Id.* ¶ 28.  A significant source of exposure is PFAS-contaminated drinking water, *id.* ¶ 29, which has affected communities around the country for decades, *id.* ¶ 1; *see also id.* ¶ 32.  The PFAS that contaminate our country's drinking water primarily originate from the industrial facilities that manufacture or use PFAS, as well as from facilities like military bases that use firefighting foam containing PFAS. *Id.* ¶ 2.  As more information about PFAS has come to light, scientists have found that the manufacturing and use of products containing even trace volumes or concentrations of PFAS can pose significant threats to public health and the environment.  *Id.* ¶ 33.

In 1986, Congress provided the public a tool to learn about the toxic chemicals that are manufactured or used at nearby industrial facilities by enacting the Emergency Planning and Community Right-to-Know Act ("EPCRA").  *Id.* ¶ 38.  EPCRA created the Toxics Release Inventory ("TRI"), a publicly accessible database that contains information reported by covered

facilities about their uses and environmental releases of listed toxic chemicals. *Id.* ¶ 39. Covered facilities that "manufacture[], process[], or otherwise use[]" TRI-listed chemicals above the threshold applicable to that chemical must submit to EPA a form that contains certain information, which EPA then uses to make the TRI. *Id.* ¶ 40 (quoting 42 U.S.C. § 11023(a)). These forms include, *inter alia*, the quantity of a TRI-listed chemical that is released, emitted, or discharged into "each environmental medium." *Id.* (quoting 42 U.S.C. § 11023(g)(1)(C)(iv)). Thus, through the TRI database, communities living near industrial facilities are able to learn about the toxic chemicals to which they may be exposed.

In the National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 7321, 133 Stat. 1198, 2277–81 (2019) (codified at 15 U.S.C. § 8921) ("2020 NDAA"), Congress specified a list of PFAS and categories of PFAS that "shall be deemed to be included in the [TRI]" effective January 1, 2020 and directed that additional PFAS "shall be deemed to be included in the [TRI]" at later dates if EPA concluded certain types of assessments for those additional PFAS. Pls.' Compl. ¶ 4 (alteration in original) (quoting 15 U.S.C. § 8921(b), (c)). In the 2020 NDAA, Congress expressly stated that such PFAS shall be added at a reporting threshold of 100 pounds, subject only to later revisions by EPA in limited and statutorily specified circumstances. 15 U.S.C. § 8921(b)(2)(A)–(B), (c)(2)(A)–(B).

This reporting threshold is significantly lower than EPCRA's statutory default thresholds of 25,000 pounds for manufacture and processing and 10,000 pounds for use to which most TRI-listed chemicals are subject. 42 U.S.C. § 11023(f)(1). Indeed, the PFAS reporting threshold of 100 pounds is in line with the lowered reporting threshold that are applicable to certain other chemicals, referred to as "chemicals of special concern," in the TRI regulations. *See* Pls.' Compl. ¶ 46; 40 C.F.R. § 372.28. Not only do these "chemicals of special concern" have lower-

3

than-default thresholds above which reporting is required, but they are also not subject to EPA-created exemptions to reporting, including the *de minimis* concentration exemption and the ability to submit a bare-bones "alternate threshold" certification that contains much less information than a typical reporting form.  Pls.' Compl. ¶¶ 43–44, 46–50; *see also* Defs.' Mot. to Stay at 2, ECF No. 17.  Thus, at the time the 2020 NDAA was adopted, no chemical that had a reporting threshold of 100 pounds or less could be subject to the *de minimis* concentration exemption or be reported on an "alternate threshold" certification, *see* Pls.' Compl. ¶ 69; it was against this backdrop that Congress added PFAS to the NDAA at a 100-pound reporting threshold.

Following the passage of the 2020 NDAA, EPA issued, without notice and comment, a rule that amended the Code of Federal Regulations to reflect that the statutorily added PFAS had been added to the TRI.  *See* Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances; Toxic Chemical Release Reporting, 85 Fed. Reg. 37,354 (June 22, 2020) (to be codified at 40 C.F.R. pt. 372) ("2020 Rule").  It did so again in June of 2021 and, after this lawsuit had been filed, in July of 2022.  *See* Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances (PFAS) to the Toxics Release Inventory Beginning With Reporting Year 2021, 86 Fed. Reg. 29,698 (June 3, 2021) (to be codified at 40 C.F.R. pt. 372) ("2021 Rule"); Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances (PFAS) to the Toxics Release Inventory Beginning With Reporting Years 2021 and 2022, 87 Fed. Reg. 42,651 (July 18, 2022) (to be codified at 40 C.F.R. pt. 372) ("2022 Rule").  Rather than listing the PFAS in the section of the Code of Federal Regulations where the other low-threshold "chemicals of special concern" were listed, EPA placed the PFAS in the section of the TRI with the TRI-listed chemicals that are subject to the much higher statutory default

thresholds of 25,000 or 10,000 pounds and then separately stated that the PFAS were subject to 100-pound reporting thresholds.  Pls.' Compl. ¶ 55.  The result of this is that, unlike every other chemical that was listed on the TRI and subject to a 100-pound reporting threshold at the time Congress adopted a 100-pound reporting threshold for PFAS, TRI-listed PFAS are subject to the *de minimis* exemption and the "alternate threshold" certification (referred to hereinafter as the "alternate threshold reporting exemption").  *Id.* ¶¶ 56, 58, 69.

By listing the statutorily added PFAS in a way that subjected them to the *de minimis* concentration exemption and alternate threshold reporting exemption, EPA is depriving Plaintiffs and their members of critical information about the facilities releasing PFAS into their communities and the resulting toxic pollution in the air they breathe and the water they drink.  *Id.* ¶ 6.  Plaintiffs are membership organizations that advocate for stronger protections from PFAS exposures, *id.* ¶¶ 11, 13, 15–16; inform their members about nearby PFAS exposures, *id.* ¶ 16; and conduct research and author reports on PFAS contamination and exposures, *id.* ¶ 18.  EPA's illegal manner of listing PFAS on the TRI hampers the ability of Plaintiffs to do the core work of their organizations—whether it be advocacy or research, *id.* ¶¶ 13, 16, 19—and interferes with the ability of Plaintiffs' members to protect themselves from PFAS exposures, *id.* ¶ 13.  Indeed, EPA itself has recognized that these exemptions significantly limit the data it received for TRI-listed PFAS and that eliminating their applicability to these PFAS would provide it with more complete information regarding the PFAS that are released.  *See infra* Part II.

## PROCEDURAL HISTORY

Plaintiffs filed this action on January 20, 2022, alleging that the 2020 Rule and the 2021 Rule violate the 2020 NDAA, 15 U.S.C. § 8921; EPCRA, 42 U.S.C. § 11023; and the

Administrative Procedure Act, 5 U.S.C. §§ 553, 706.[1]  *See generally* Pls.' Compl.  Specifically,

Plaintiffs allege, *inter alia*, that in the 2020 NDAA "Congress intended for the statutorily listed

PFAS to be treated the same as other toxic chemicals in the TRI with reporting thresholds of 100

pounds," *id.* ¶ 70, and that "the 2020 NDAA gave EPA no discretion as to the outcome of the

rule" such that "the ministerial action EPA was compelled to take was to require TRI reporting

of the statutorily listed PFAS *without* application of the *de minimis* concentration exemption or

the alternate threshold exemption," *id.* ¶ 86; *see also* 2020 Rule, 85 Fed. Reg. at 37,356

("Because this action is being taken to comply with an Act of Congress where Congress added

these chemicals to the TRI and lowered the reporting thresholds for these chemicals, . . . EPA

has no discretion as to the outcome of this rule . . . ."); 2021 Rule, 86 Fed. Reg. at 29,700 ("This

action is being taken to comply with a mandate in an Act of Congress, where Congress identified

actions that automatically add these chemicals to the TRI.  Thus, EPA has no discretion as to the

outcome of this rule . . . .").  Plaintiffs seek, among other things, declaratory judgments declaring

that: (1) EPA's adoption of the 2020 Rule and 2021 Rule violates the 2020 NDAA by

"subject[ing] the statutorily listed PFAS to the *de minimis* concentration exemption and alternate

threshold reporting exemption, which are not authorized by and contrary to the terms of the 2020

NDAA," *id.* at 26 (prayer for relief), and (2) pending EPA's adoption of revised rules that

comply with the Court's decision, all of the statutorily listed PFAS remain subject to TRI

reporting pursuant to the 2020 NDAA without being subject to the *de minimis* concentration

exemption or the alternate threshold reporting exemption, *id.* at 27 (prayer for relief).

---

[1] The 2022 Rule, in which EPA compounded its error, was issued during the pendency of this
litigation.  On this same day, and with EPA's consent, Plaintiffs are filing an amended complaint
to include challenges to this rule.  The amended complaint does not assert new theories of
illegality.

On March 3, 2022, EPA moved, without opposition, to extend its time to respond to the complaint from March 27, 2022 to April 22, 2022. EPA's Unopposed Mot. to Extend Deadline, ECF No. 11. The Court granted EPA's motion that same day. Minute Order, Mar. 3, 2022. On April 5, 2022, EPA moved to stay this case until September 30, 2022, explaining that it "is undertaking a rulemaking process, the outcome of which could obviate some or all [of] the dispute here." EPA's Unopposed Mot. to Stay at 1, ECF No. 12. At the time, Plaintiffs did not oppose staying the case to allow EPA to focus its efforts on the rulemaking process that was already underway, *id.*, with the understanding that EPA intended to publish a proposed rule that addresses the instant dispute by September 30. The Court granted EPA's request, ordering that the litigation be stayed through September 30, 2022. *See* Minute Order, Apr. 5, 2022.

However, by mid-September 2022, EPA had not yet published a proposed rule that would obviate this dispute, and it was not certain when or if it would do so. On September 22, 2022, the parties submitted a joint status report, informing the Court that the parties were unable to agree on whether the Court should extend the stay. Joint Status Report at 2, ECF No. 13. The status report stated that the Office of Management and Budget ("OMB") began reviewing EPA's draft proposed rule on August 16, 2022. *Id.* at 1. Counsel for EPA further relayed that EPA "*anticipates* publication of the proposed rule by December 2022 *provided that the OMB review process completes within 90 days*" and explained that if the "timeline change[s], the agency will inform the Court." *Id.* (emphases added).

The stay in this case expired on September 30, 2022. On October 6, 2022, the parties submitted a Joint Motion to Govern, setting forth a proposed briefing schedule for EPA's Motion to Stay and Plaintiffs' motion to expedite consideration of the Motion to Stay. *See* Joint Mot. to Govern, ECF No. 15. The Court adopted that briefing schedule the following day. Order, Oct.

7, 2022, ECF No. 16.  On October 24, 2022, EPA moved to stay the case once again.  *See* Defs.'
Mot. to Stay.  Plaintiffs oppose the Motion to Stay and further request that the Court expedite
consideration of the Motion to Stay so that this lawsuit—filed nearly ten months ago—may
proceed to resolution and communities may receive much-needed information about the release
of highly toxic chemicals in the places they live, work, and play.

## ARGUMENT

### I.   EPA Has Not Met Its Burden to Show It Is Entitled to a Stay of Proceedings.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520
U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).  In determining
whether to issue a stay, courts consider: "(1) harm to the nonmoving party if a stay does issue;
(2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not
issue; and (3) whether a stay would promote efficient use of the court's resources." *Ctr. for
Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019).  "A court's stay order 'must
be supported by "a balanced finding that such need overrides the injury to the party being
stayed"'"; thus, "'[i]f there is even a fair possibility that the stay . . . will work damage to some
one else,' the movant 'must make out a clear case of hardship or inequity in being required to go
forward.'" *Id.* (first quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C.
Cir. 2012); then quoting *Landis*, 299 U.S. at 255).

### A.  There is at least a fair possibility that Plaintiffs will be harmed by a stay.

There is a fair possibility—indeed, a very real possibility—that Plaintiffs will be harmed
by the indefinite stay of proceedings EPA seeks because, during the pendency of EPA's
rulemaking proceedings—the outcome of which is uncertain both in timing and substance—

Plaintiffs will continue to be deprived of vital information by the operation of illegal rules without the opportunity to challenge those rules.[2]

Plaintiffs face at least a "fair possibility" of harm from the risk that EPA will not ultimately adopt a rule that eliminates the applicability of the *de minimis* and alternate threshold reporting exemptions to the listed PFAS or will not do so in a timeframe that offers Plaintiffs the relief they seek.  As another court has recognized, "[e]ven if EPA exercises complete diligence in passing the proposed regulation, that diligence does not eliminate the ordinary uncertainty in the rulemaking process, which creates at least a 'fair possibility' of harm." *California v. EPA*, 360 F. Supp. 3d 984, 993 (N.D. Cal. 2018).  In its Motion to Stay and supporting materials, EPA repeatedly recognizes this uncertainty:  EPA states that it is "developing a rule that EPA *anticipates* will modify the reporting requirements for the statutorily listed PFAS by eliminating the exemptions that Plaintiffs object to in this litigation" and that it "*expects* to propose this rule by December 2022 and *anticipates* taking final action by November 30, 2023."  Defs.' Mot. to Stay at 5–6 (emphases added).  If EPA does not finalize its rulemaking by the aspirational date of November 30, 2023 for changes to the TRI for reporting year 2024, Plaintiffs will go yet another year without the information they need to understand and address the toxic exposures facing their members and their members' families.[3]

Even if EPA does finalize its rulemaking by November 30, 2023, there is no guarantee that the finalized rule would eliminate the challenged exemptions to the TRI-listed PFAS, given

---

[2] Although EPA frames its request as one to "temporarily stay the litigation pending EPA's completion of its rulemaking process, which is *expected* to be completed by November 30, 2023," Defs.' Mot. to Stay at 1 (emphasis added), it provides no date by which the stay would expire, essentially asking for a stay of indefinite duration.

[3] EPCRA provides that "[a]ny revision made on or after January 1 and before December 1 of any calendar year shall take effect beginning with the next calendar year."  42 U.S.C. § 11023(d)(4).

that rules may change during the notice-and-comment process.  Indeed, in EPA's first stay

motion, it left open the possibility that the anticipated rule would not address Plaintiffs' claims

by stating that it "is undertaking a rulemaking process, the outcome of which *could* obviate *some*

*or all* [of] the dispute here."  EPA's Unopposed Mot. to Stay at 1 (emphases added).  And again,

EPA recognizes that the uncertainty extends to the content of the final rule: it repeatedly states

that EPA seeks to complete a rulemaking that "*if finalized as expected*" would resolve Plaintiffs'

claims.  Defs.' Mot. to Stay at 1, 5, 7 (emphasis added).  If it is not "finalized as expected," *id.*,

or does not resolve Plaintiffs' claims, including for the reasons discussed *infra*, Plaintiffs will

have lost over a year during which they could have litigated this time-sensitive issue.  *Cf.*

*Asylumworks v. Mayorkas*, No. 20-cv-3815, 2021 WL 2227335, at *6 (D.D.C. June 1, 2021)

(finding a "'fair possibility that the [proposed] stay' will 'damage' plaintiffs at a minimum, by

delaying any resolution of their claims" (alteration in original) (quoting *Landis*, 299 U.S. at

255)).

   Moreover, EPA's recent argument that "its rulemaking, if finalized as expected, would

resolve Plaintiffs' claims," Defs.' Mot. to Stay at 7, rests on a misunderstanding of those claims.

Plaintiffs' claim for a violation of the 2020 NDAA is based on the argument that the 2020

NDAA *required* EPA to add the statutorily listed PFAS to the TRI in a manner that would make

them ineligible for the *de minimis* exemption and the alternate threshold reporting exemption.

That is, Plaintiffs do not agree that EPA had discretion to choose whether or not to make the

TRI-listed PFAS subject to the challenged exemptions and that EPA simply made the wrong

choice.  But by engaging in notice-and-comment rulemaking (rather than the direct final rule

process EPA used as recently as July 2022 in connection with the TRI PFAS rules challenged

here), EPA now appears to be proceeding under the assumption that it has discretion under the

2020 NDAA to either list the PFAS in a manner that would subject them to these exemptions—the manner that this action alleges is illegal—or to list them in a way that does not.  Making the latter choice—to list the PFAS through notice-and-comment rulemaking in a way that does not subject them to the exemptions—does not "resolve" Plaintiffs' claims; rather, it assumes EPA has discretionary authority that Plaintiffs assert it does not.  The upshot is that EPA is reserving for itself the power to codify PFAS automatically added to the TRI in a way that subjects them to the challenged exemptions while simultaneously attempting to evade judicial review of its authority to do so.

EPA's assertion that it is unlikely that Plaintiffs would be able to obtain relief from this Court any faster than they could through the rulemaking process is similarly unfounded.  *See* Defs.' Mot. to Stay at 6.  EPA argues that it is unlikely that the Court could reach a resolution on this case within a year given that "no administrative records or merits briefs hav[e] been filed" and that "the earliest this litigation could resume is November 17, 2022."  *Id.*  However superficially appealing that argument may be, it collapses upon scrutiny.  The litigation is not currently stayed—the stay that was in effect expired on September 30, 2022.  Thus, EPA's answer to Plaintiffs' amended complaint filed today with consent is due within sixty days, or January 3, 2023, and the certified list of the contents of the administrative record is due thirty days later on February 2, 2023.  *See* LCvR 7(n)(1).  Since it is unlikely additional discovery would be required in this record review case, this timeframe allows motions for summary

judgment to be fully briefed by June 1, 2023,[4] giving the Court nearly six months to resolve the dispute before the November 30, 2023 deadline.[5]

The cases on which EPA relies to argue that Plaintiffs will not suffer hardship do not compel a different result.  Several factors found by the court in *Chinatown Service Center v. U.S. Department of Health and Human Services*, No. 21-cv-331, 2021 WL 8316490, at *1–2 (D.D.C. Oct. 13, 2021), to counsel in favor of a stay are absent here.  Most notably, in that case, the court had already made a determination that the plaintiffs faced serious challenges in obtaining their requested relief and that both sides "propose[d] maintaining the stay as their back-up form of relief."  *Id.* at *1; *see also id.* at *2.  Moreover, a legal issue at the center of this case will not "likely be moot around the same time [the court] reaches a decision," as it was in *Chinatown Service Center*, because, as previously discussed, there is no indication that the scope of EPA's authority will be resolved by EPA's rulemaking.  *Id.* at *2; *cf. Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 472 (D.C. Cir. 1991) (referring to previously granted stay as justified by new rulemaking in narrow circumstances and considering a stay of the remainder of the proceedings in light of the potential that the new rulemaking will fully moot petitioner's challenge).[6]  And

---

[4] This would likely be true even if EPA successfully moves for another extension of time to answer.

[5] EPA asserts, in a footnote, that the Court "could not, as Plaintiffs request, issue advisory opinions regarding the applicability of various reporting exemptions."  Defs.' Mot. to Stay at 6 n.1.  Plaintiffs do not seek advisory opinions but rather seek judicial declarations regarding the effect of "hold[ing] unlawful and set[ting] aside" agency action, 5 U.S.C. § 706(2)—that the *status quo* created by the 2020 NDAA would be returned and the statutorily listed PFAS would not be subject to the challenged exemptions, as Congress intended.

[6] The Court should not draw any conclusions from the granted stay in *National Wildlife Federation v. EPA* because the case does not report on the agency's representations about the rule; whereas here, EPA's rulemaking process suggests it believes its action is discretionary, meaning that it will not "carr[y] the prospect" of resolving a central claim in this case.  925 F.2d at 472.

while the court in *Asylumworks v. Mayorkas* considered the tentative nature of an agency's rulemaking plan in denying a stay, it also found support for its decision in the fact that—as here—the government defendant did not "anticipate a final rule until . . . a year from now barring potential delays" during which "plaintiffs would continue to be subject to the challenged rules, without any resolution of their claims that these rules are unlawful."  2021 WL 2227335, at *5.

As a result of the *de minimis* and alternate threshold reporting exemptions, Plaintiffs and their members are being denied the information needed to protect themselves from exposures to PFAS and to advocate for stronger regulations against such exposures.  Staying this litigation yet again would prevent Plaintiffs from obtaining judicial resolution of their claims—including claims that are not being resolved in any other forum—while continuing to deprive Plaintiffs of the information to which Congress said they were legally entitled.  *Cf. id.*

### B. EPA has not shown a clear case of hardship or inequity in being required to proceed with this case.

Because there is a "'fair possibility that the stay . . . will work damage to' Plaintiffs' interests, [EPA's] burden [is] even heavier, for it must . . . show 'a clear case of hardship or inequity in being required to go forward.'"  *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (quoting *Landis*, 299 U.S. at 255).  EPA cannot meet its burden.

EPA argues that it will suffer hardship by "substantially diverting towards this litigation its limited resources currently working to complete the rulemaking process."  Defs.' Mot. to Stay at 8.  As multiple courts in this District have explained, the "burden of litigation is wholly insufficient to warrant a stay."  *Asylumworks*, 2021 WL 2227335, at *6 (concluding that government defendants "made no case of hardship or inequity at all, much less a clear one" where "defendants fail[ed] to show that, absent a stay, the agency would suffer any hardship, save for the expenditure of resources in proceeding with the litigation"); *see also Ctr. for*

*Biological Diversity*, 419 F. Supp. 3d at 21 ("As the Government itself acknowledges, [i]t is true that being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." (internal quotation marks and citations omitted)).

While EPA submits a declaration from the Branch Chief of the Data Collection Branch ("DCB") in EPA's Office of Pollution Prevention and Toxics, in which he states that "the time EPA staff spend assisting in this litigation will impair DCB's ability to timely finalize the rulemaking described below and prepare the resources for understanding and complying with the final rule," Decl. of David Turk ¶ 5, ECF No. 17-1, EPA "does not explain how defense of this suit, which falls largely to lawyers at the Department of Justice, will divert substantial [EPA] resources." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 22 (concluding that declaration "stating only that 'litigation related tasks' could 'divert [agency] employees from focused attention on their work' and thus 'hinder the schedule we are trying to achieve'" did not "explain how defense of this suit . . . will divert substantial [agency] resources" and did "not meet the standard of a 'clear case of hardship or inequity'" (citations omitted)).  Without more, EPA has not met its burden of showing that proceeding with the litigation would present "a clear case of hardship or inequity." *Landis*, 299 U.S. at 255.

**C. A stay would not be an efficient use of the Court's resources.**

The Court's resources would not be wasted by allowing this case to proceed.  The 2020 NDAA adds PFAS to the TRI automatically when certain triggering conditions are met, such that the inclusion of PFAS on the TRI is an ongoing process.  *See* 15 U.S.C. § 8921(c) (providing that a PFAS "shall be deemed to be included in the [TRI] beginning January 1 of the calendar year after" the date that one of five types of events occurs).  Without a Court ruling that the 2020 NDAA *required* EPA to codify the PFAS automatically added under 15 U.S.C. § 8921(b) and (c)

in a manner that does not subject them to the *de minimis* or alternate threshold reporting exemptions, there would be nothing to stop EPA from exercising the discretion it believes it has and illegally codifying the PFAS added under § 8921(c) in a way that subjects them to these exemptions.  Indeed, in both 2021 and 2022, PFAS were automatically added to the TRI as a result of the § 8921(c) triggering events.  And in the resulting 2021 Rule and 2022 Rule, EPA listed those PFAS in a manner that subjected them to the *de minimis* and alternate threshold reporting exemptions.  EPA has not indicated that there is anything in its proposed rule that would prevent it from simply choosing to do so again.

The proposed rulemaking thus does not resolve a central legal issue underlying Plaintiffs' 2020 NDAA claim:  What is the scope of EPA's authority concerning how to codify the statutorily listed PFAS?  Can EPA choose to codify the PFAS in a way that subjects them to these exemptions or does the 2020 NDAA, as Plaintiffs assert, prohibit EPA from ever making this choice?  Allowing this case to continue would allow the Court to answer those questions; it would not, as EPA argues, "waste party and judicial resources and . . . require duplication of efforts to resolve closely related issues on separate occasions." Defs.' Mot. to Stay at 8 (quoting *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D. Cal. 2008)).[7]  There is no ongoing effort to resolve the question of whether the 2020 NDAA authorized EPA to choose whether or not to subject statutorily listed PFAS to exemptions that reduce the information available to the public, and there would thus be no duplication of effort.

---

[7] Defendants also cite *Khadr v. Bush*, 587 F. Supp. 2d 225, 229 (D.D.C. 2008) for the proposition that litigating "the same issues that EPA could resolve through its rulemaking process is a waste of judicial resources" and favors a stay, Defs.' Mot. to Stay at 9, but *Khadr* involved the special circumstance of whether the court should abstain from intervening in a pending military court proceeding, not a stay related to administrative rulemaking, and does not provide instruction on what a court should consider in that context.

Given that the 2020 NDAA will continue to add PFAS to the TRI automatically when certain triggering conditions are met, the scope of authority is an issue that will remain live unless EPA acknowledges or the Court rules that EPA is required to codify all statutorily listed PFAS in a manner that does not subject them to the *de minimis* exemption or alternate threshold reporting exemption.  Staying the case would simply defer consideration of this question, which is not being answered or considered in any other proceeding; it would not obviate the need for such consideration.

**II.     Expedited Consideration of the Motion to Stay Is Appropriate.**

Expedited consideration of the Motion to Stay is warranted under 28 U.S.C. § 1657(a) and the Court's equitable powers.  Absent expedited consideration, Plaintiffs will continue to be deprived of important information to which they are legally entitled without the ability to pursue their claims in a manner that would offer them timely relief.

Under 28 U.S.C. § 1657(a), a court "shall expedite the consideration of any action" "if good cause therefor is shown."  The legislative history of that section provides that "good cause" exists, *inter alia*, in "actions where the public interest in enforcement of the statute is particularly strong."  H.R. Rep. No. 98-985, at 6 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 5779, 5784.

Here, good cause exists for expediting consideration of the Motion to Stay.  This is an action where "the public interest in enforcement of the statute is particularly strong."  *Id*. EPCRA was enacted "to provide the public with important information on the hazardous chemicals in their communities."  H.R. Rep. No. 99-962, at 281 (1986) (Conf. Rep.).  And by adding PFAS to the TRI, the 2020 NDAA sought to ensure that the public would receive such "important information," *id.*, on the PFAS at issue in this dispute.  *See Examining Legislation to Address the Risks Associated with Per- and Polyfluoroalkyl Substances (PFAS): Hearing Before*

16

*the S. Comm. on Env't & Pub. Works,* 116th Cong. 4 (May 22, 2019) (statement of Sen. Thomas

R. Carper)[8] (explaining that the PFAS Release Disclosure and Protection Act, S. 1507, "[sought]

to . . . inform the public [of] when the PFAS chemicals are being released into the

environment"); Comm. on Env't & Pub. Works Bus. Meeting to Consider S. 1507, 116th Cong.

9 (June 19, 2019) (statement of Sen. Thomas R. Carper)[9] (stating that by "add[ing] about 200

PFAS chemicals to the [TRI]," "we can better understand the research, cleanup and prevention

that are needed at every level of government").  *Compare* S. 1507, 116th Cong. § 101 (2019),

*with* 2020 NDAA (incorporating amendment identical to S. 1507 into final law with nonmaterial

changes).  By their very terms, these statutes are intended to provide information of interest to

the public and not to any one particular individual; the public interest in enforcing those statutes

is necessarily "strong."  H.R. Rep. No. 98-985, at 6.

The need to enforce the 2020 NDAA and EPCRA as drafted and intended by Congress is

highlighted by the fact that EPA has continued its illegal manner of listing PFAS that the 2020

NDAA added to the TRI while this action has been stayed.  On July 18, 2022, EPA issued a final

rule listing statutorily added PFAS in a manner that once again subjected those PFAS to the

exemptions challenged here.  *See* 2022 Rule, 87 Fed. Reg. 42,651.  Notably, EPA issued this

final rule—compounding the errors complained of in this action—*after* it had sought a stay on

the ostensible basis that it was engaging in rulemaking that "could" resolve the issues raised in

this suit.  EPA's Unopposed Mot. to Stay at 1.  This highlights the need for prompt judicial

action and suggests that EPA does not agree with Plaintiffs that the 2020 NDAA prohibits listing

---

[8] Available at: https://www.congress.gov/116/chrg/CHRG-116shrg36935/CHRG-
116shrg36935.pdf.

[9] Available at: https://www.epw.senate.gov/public/_cache/files/1/e/1e10af86-e4e4-49f3-9252-
6f8efa8478ba/C38D4BCDCAFD0D1E0066D470EF06F0D9.spw-061919.pdf.

the statutorily added PFAS in a manner that incorporates the *de minimis* exemption and the alternate threshold reporting exemption.

The similarities between this case and those brought under the Freedom of Information Act ("FOIA") further demonstrate that "good cause" exists to expedite consideration of the Motion to Stay.  "[B]oth the statute and legislative history [of section 1657(a)] invoke cases brought under [FOIA] as paradigmatic examples of 'good cause'" because "prompt adjudication of FOIA cases (a) foster the important goal of creating an informed citizenry; (b) involve remedies of a 'transitory' nature . . . ; and (c) do not 'involve extended discovery or testimony and therefore do not burden court dockets for extensive periods of time.'"  *Ontario Forest Indus. Ass'n*, 444 F. Supp. 2d 1309, 1319 (Ct. Int'l Trade 2006) (quoting H.R. Rep. No. 98-985, at 5–6, *as reprinted in* 1984 U.S.C.C.A.N. at 5783–84).  So too does this case "foster the important goal of creating an informed citizenry," *id.*, by seeking to ensure that information useful and important to Plaintiffs, their members, and others is provided in accordance with the law. Indeed, EPA has recognized that "certain exemptions and exclusions" applicable to PFAS reporters through the TRI PFAS rules challenged here "significantly limited the amount of data that EPA received for [listed PFAS] in the first year of reporting," and it expressly called out the challenged *de minimis* exemption as an "[e]xample[]" of these data-limiting exemptions and exclusions.  EPA, *PFAS Strategic Roadmap: EPA's Commitments to Action 2021–2024*, at 11–12 & 23 n.iv (Oct. 2021).[10]  EPA has separately acknowledged that eliminating the *de minimis* exemption's application to PFAS—the remedy this action seeks—"would result in a more complete picture of the releases and other waste management quantities for [PFAS] chemicals"

---

[10] Available at: https://www.epa.gov/system/files/documents/2021-10/pfas-roadmap_final-508.pdf.

"[b]ecause PFAS are used at low concentrations in many products." *EPA Releases Preliminary Data for 2021 Toxics Release Inventory Reporting*, EPA (July 28, 2022).[11]

Given that TRI data is reported and published on an annual basis, any delay in this case could lead to one or more annual reporting cycles that do not include the statutorily required data because of EPA's illegal rules. During this delay, those who live in neighborhoods with facilities that are known to use PFAS but that are not submitting information to the TRI, such as individuals affiliated with Plaintiff National PFAS Contamination Coalition, *see* Pls.' Compl. ¶¶ 11–13, will continue to be deprived of the information Congress mandated they receive— information that enables those individuals to protect themselves and their families from exposures to PFAS, *id.* ¶ 13.

Because the public interest in enforcement of the statutes at issue here is particularly strong, Plaintiffs respectfully request that the Court expedite consideration of EPA's Motion to Stay and, for the reasons stated above, permit the case to proceed.


November 4, 2022                    /s/ Eve C. Gartner
                                   Eve C. Gartner
                                   D.C. Bar ID NY0451
                                   Kelly E. Lester*
                                   Earthjustice
                                   48 Wall Street, 19th Floor
                                   New York, NY 10005
                                   (212) 845-7381
                                   (332) 251-0243
                                   egartner@earthjustice.org
                                   klester@earthjustice.org

---

[11] Available at: https://www.epa.gov/chemicals-under-tsca/epa-releases-preliminary-data-2021-toxics-release-inventory-reporting#:~:text=Today%2C%20the%20U.S.%20Environmental%20Protection,industrial%20facilities%20across%20the%20country.

* Application for admission to the United States District Court for the District of Columbia has been accepted and is pending a ruling.