**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL PFAS CONTAMINATION
COALITION, et al.,

      Plaintiffs,

      v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

      Defendants.

Civil Action No. 22-132 (JDB)

---

## ORDER

Plaintiffs National PFAS Contamination Coalition, Sierra Club, and Union of Concerned Scientists brought this action challenging two final rules promulgated by the Environmental Protection Agency ("EPA") regulating per- and polyfluoroalkyl substances ("PFAS").  See Compl. [ECF No. 1].  Defendants EPA and Michael Regan, the Administrator of the EPA, have moved to stay the litigation pending EPA's completion of a rulemaking process that is likely to render the litigation moot.  See Defs.' Mot. to Temporarily Stay Litigation Pending Completion of Rulemaking [ECF No. 17] ("Mot. to Stay").  For the reasons set forth below, the Court will grant the motion and stay the litigation through July 31, 2023.

### I.  Background

Congress enacted the Emergency Planning and Community Right-to-Know Act ("EPCRA") in 1986 to help inform the public about the presence of toxic chemicals in their communities.  See Am. Compl. [ECF No. 21] ¶ 38.  One component of EPCRA requires facilities that manufacture, process, or otherwise use a quantity of toxic chemicals above a certain threshold to publish information about the use and release of such chemicals in a publicly available database,

1

the Toxic Release Inventory ("TRI").  Id. ¶¶ 3, 39; see 42 U.S.C. § 11023(a), (j).  The default threshold that triggers the reporting requirement is either 25,000 or 10,000 pounds per year, depending on whether the toxic chemicals are manufactured, processed, or otherwise used at a given facility.  Am. Compl. ¶ 41; see 42 U.S.C. § 11023(f).  When EPCRA was initially passed, it contained a list of over 300 toxic chemicals subject to the various reporting requirements.  Am. Compl. ¶ 41; see 42 U.S.C. § 11023(c).

Shortly after ECPRA was enacted, EPA adopted two "burden reduction" tools.  Mot. to Stay at 2; see Am. Compl. ¶ 43.  First, under the de minimis concentration exemption, toxic chemicals present in a low concentration (less than 1% for some; less than 0.1% for others) are not considered in a facility's calculation of the reporting threshold, nor do they need to be reported on the TRI.  Am. Compl. ¶ 43; 40 C.F.R. § 372.38(a).  Second, the "alternate threshold" regulation allows facilities whose total release of a listed toxic chemical is less than 500 pounds annually to apply a threshold of 1,000,000 pounds per year—far higher than the default threshold of 25,000 or 10,000 pounds.  Am. Compl. ¶ 44; 40 C.F.R. § 372.27(a).  Facilities subject to the "alternate threshold" are also able to submit a more simplified reporting form.  Am. Compl. ¶ 44; see 40 C.F.R. § 372.27(b).

These two tools are not available to facilities in all instances.  EPA specified a number of toxic chemicals that "have been shown to cause adverse effects at concentrations far less than the de minimis levels" ("Chemicals of Special Concern").  Am. Compl. ¶¶ 46–50 (quoting 64 Fed. Reg. at 58,727); see 40 C.F.R. § 372.28.  Chemicals of Special Concern have a lower reporting threshold—just 100 pounds—and the de minimis exemption and alternate threshold are inapplicable to them.  See Am. Compl. ¶¶ 46–50; 40 C.F.R. §§ 372.38(a)(2), 372.27(e).

PFAS—"a large family of highly toxic, synthetic chemical substances linked to many serious health harms," Am. Compl. ¶ 1—were not initially listed in the ECPRA.  Id. ¶ 3.  But in

recent years, "the scale of the PFAS crisis has come into focus" and "communities around the country have sought information" about PFAS contamination.  Id. ¶ 36.  Congress thus passed the National Defense Authorization Act for Fiscal Year 2020 ("2020 NDAA"), which amended the section of the ECPRA relevant here.  See 15 U.S.C. § 8921.  Congress added certain PFAS and categories of PFAS to the list of chemicals that must be included in the TRI and set the reporting threshold for these PFAS at 100 pounds.[1]  Am. Compl. ¶¶ 51–53.  That reporting threshold—100 pounds—is the same as the threshold for Chemicals of Special Concern, but EPA's rules implementing the 2020 NDAA[2] did not include PFAS on the list of Chemicals of Special Concern. Instead, EPA added PFAS to the general list of toxic chemicals (with a much higher threshold) and implemented 40 C.F.R. § 372.29, which reflects the statutory requirement that PFAS are subject to a 100-pound threshold and specifies that the threshold applies "'[n]otwithstanding' that all of the other toxic chemicals" alongside which PFAS are listed are subject to the higher threshold.  Id. ¶¶ 54–55 (quoting 40 C.F.R. § 372.29).

By adding PFAS to the general list of toxic chemicals, as opposed to the list of Chemicals of Special Concern, EPA subjected PFAS to the de minimis concentration exception and made the "alternate threshold" available for facilities that manufacture, process, or use PFAS.  See Am. Compl. ¶¶ 56–58.  Thus, PFAS are in a unique position—they have a low reporting threshold, yet facilities can still avoid the fulsome reporting requirements if they meet the requirements for either of the two burden reduction tools described here.

---

[1] Congress also specified that some PFAS would be added to the list following certain events, such as EPA finalizing the toxicity value for them.  Am. Compl. ¶ 51.

[2] EPA implemented the 2020 NDAA through three rules: Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances; Toxic Chemicals Release Reporting, 85 Fed. Reg. 37,354 (June 22, 2020) ("2020 Rule"); Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances (PFAS) to the Toxic Release Inventory Beginning With Reporting Year 2021, 86 Fed. Reg. 29698 (June 3, 2021) ("2021 Rule"); and Implementing Statutory Addition of Certain Per- and Polyfluoroalkyl Substances (PFAS) to the Toxic Release Inventory Beginning With Reporting Years 2021 and 2022, 87 Fed. Reg. 42,651 (July 18, 2022) ("2022 Rule").  Am. Compl. at 1–2.  The Court will refer to all three rules collectively as the "PFAS Rules."

Plaintiffs filed this case challenging the PFAS Rules that put PFAS in this unique position—they argue that PFAS should be treated the same as Chemicals of Special Concern and, accordingly, that PFAS reporting should not be subject to either the <u>de minimis</u> concentration exemption or the "alternate threshold."  <u>See</u> Am. Compl. ¶¶ 66–87.  Specifically, they allege that the PFAS Rules violate the 2020 NDAA, 15 U.S.C. § 8921; EPCRA, 42 U.S.C. § 11023; and in the alternative, the Administrative Procedure Act, 5 U.S.C. §§ 553, 706.  <u>See</u> Am. Compl. ¶¶ 66–87.

In April 2022, EPA moved without opposition to stay the case until September 30, 2022, explaining that it was "undertaking a rulemaking process, the outcome of which could obviate some or all the dispute here" and that it hoped to "focus its limited resources on the rulemaking." EPA's Unopposed Mot. to Stay Litigation [ECF No. 12] at 1.  The Court granted that motion and stayed the case until September 30, 2022.  Apr. 5, 2022 Min. Order.  Shortly after the stay expired, the parties informed the Court that they "have not been able to agree on whether the stay of this litigation . . . should be extended" and filed a joint motion to set a briefing schedule for an expected motion to stay from EPA.  Joint Mot. to Govern [ECF No. 15].  The Court adopted that briefing schedule, <u>see</u> Scheduling Order [ECF No. 16], and defendants filed the instant motion to stay litigation on October 24, 2022, <u>see</u> Mot. to Stay.  Plaintiffs filed their opposition on November 4, 2022 and requested expedited consideration of the motion.[3]  <u>See</u> Pls.' Mem. in Opp'n to Mot. to Stay & in Supp. of Pls.' Unopposed Mot. for Expedited Consideration of Mot. to Stay [ECF No. 18] ("Opp'n").  Defendants then filed a reply in support of their motion on November 16, 2022. Defs.' Reply in Supp. of Mot. to Stay [ECF No. 24] ("Reply").  The motions are now fully ripe.

---

[3] Because the Court resolves the motions with this Order, it will deny the motion to expedite consideration as moot.  <u>See, e.g.</u>, <u>United States v. Kellogg Brown & Root Servs., Inc.</u>, 284 F.R.D. 22, 39 (D.D.C. 2012) (holding a motion to expedite consideration moot due to the court's action in resolving the primary motion).

## II.    Legal Standard

A district court has "broad discretion to stay proceedings as an incident to its power to control its docket." Clinton v. Jones, 520 U.S. 681, 706 (1997).  As such, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Hisler v. Gallaudet Univ., 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (quoting Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979)).  In exercising its discretion, a court must "'weigh competing interests and maintain an even balance' between the court's interest in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 733 (D.C. Cir. 2012) (citation omitted) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936)).  The three factors a court considers when deciding whether to stay a case are: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." Ctr. for Biological Diversity v. Ross, 419 F. Supp. 3d 16, 20 (D.D.C. 2019).  The length of the stay is another factor courts take into account: the nonmoving party may be required "to submit to delay not immoderate in extent and not oppressive in its consequences if . . . convenience will thereby be promoted," Landis, 299 U.S. at 256, but "a court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" Belize Soc. Dev., 668 F.3d at 731–32 (quoting Landis, 299 U.S. at 255).

## III.    Analysis

Defendants' primary argument in support of their motion to stay is that EPA is currently engaged in rulemaking, the outcome of which is likely to moot this dispute.  See Mot. to Stay at 4, 5–7, 8–9.  Defendants submitted a declaration from David Turk, the Branch Chief of the Data Collection Branch in the Office of Pollution Prevention and Toxics at EPA in support of this

argument.  See Decl. of David Turk in Supp. of Defs.' Mot. to Stay [ECF No. 17-1] ("Turk Decl.").

He described the proposed rule, which "would change the reporting requirements for [the listed]

PFAS"—specifically, it would list them "as Chemicals as Special Concern, and thereby eliminate

the availability of several burden-reduction tools for covered facilities (e.g., the De Minimis

Concentration Exemption and the option to use the Alternate Threshold Certification)."  Id. ¶ 6.

Thus, the proposed rule, if implemented, would give plaintiffs the substantive relief they seek.

The proposed rule was then published in the Federal Register on December 5, 2022.  See

Defs.' Notice of Action on Proposed Rulemaking [ECF No. 25]; accord Turk Decl. ¶ 7(b)

(anticipating publication of proposed rule in December 2022).  According to Turk, EPA "aims to

send the final rule to OMB ["the Office of Management Budget"] for review in July of 2023," and

it "intends to sign a final rule by November 30, 2023."  Turk Decl. ¶ 7(c), (d).  Because the EPCRA

provides that "[a]ny revision made on or after January 1 and before December 1 of any calendar

year shall take effect beginning with the next calendar year," 42 U.S.C. § 11023(d)(4), whether

the Court stayed the case and the new rule took effect in November 2023, or instead the Court

ordered briefing and decided the case in plaintiffs' favor within the next 11 months, the soonest

that any change in reporting could take effect is January 2024.  Plaintiffs primarily argue that the

uncertainty in rulemaking creates an unacceptable risk of harm to them, Opp'n at 8–13; defendants

counter that the rule's expected promulgation minimizes any harm to plaintiffs, Mot. to Stay at 5–

7, and would conserve judicial resources as it would moot plaintiffs' claims, id. at 8–9.

Having weighed the harm to each party and the impact on judicial efficiency, the Court

concludes that a stay is warranted and will stay the case until July 31, 2023.

### A.  Harm to Plaintiffs

The first factor to consider is the "harm to the nonmoving party"—here, the plaintiffs—"if

a stay does issue."  Ctr. for Biological Diversity, 419 F. Supp. 3d at 20.  Plaintiffs' alleged harm

comes from "the risk that EPA will not ultimately adopt a rule that eliminates the applicability of the de minimis and alternate threshold reporting exemptions to the listed PFAS or will not do so in a timeframe that offers Plaintiffs the relief they seek." Opp'n at 9.  If EPA does not finalize the rule in its current form by November 30, 2023, "Plaintiffs will go yet another year without the information they need to understand and address the toxic exposures facing their members and their members' families." Id.

That outcome is possible.  However, it is also possible that even if the parties proceed with litigation, any rule change in response to an order from the Court in plaintiffs' favor would not take effect until 2025.  See Reply at 3; Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs., Civ. A. No. 20-1630 (JEB), 2021 WL 4033072, at *3 (D.D.C. Sept. 3, 2021) (explaining that "while Plaintiffs correctly point out that Defendants' rulemaking will not provide them immediate relief, neither would lifting the stay" as the court would still need to decide complicated, substantive motions).  And the Court has no reason to believe that defendants' proposed schedule, which gives EPA almost a year to review public comment and finalize the rule, is unlikely to hold.  Indeed, the first anticipated event—publication of the proposed rule in December 2022—bore out as expected.

There is, of course, always some uncertainty in the rulemaking process.  But the case presented here is not one where defendants are "unable to predict a timeframe for completion of the [agency's] rulemaking process," Garcia v. Credit One Bank, N.A., No. 2:18-CV-191 JCM (GWF), 2018 WL 11304605, at *2 (D. Nev. Oct. 3, 2018), or their arguments are "premised on speculative administrative changes," Asylumworks v. Mayorkas, No. 20-CV-3815 (BAH), 2021 WL 2227335, at *5 (D.D.C. June 1, 2021).  Defendants have provided the proposed timeline and published the draft rule, and the rule as written will fully address the harm identified by plaintiffs: further time passing "without the information they need to understand and address the toxic

exposures" communities could be facing, Opp'n at 9.[4]  Thus, although staying this case could potentially harm plaintiffs, in light of the case's posture and the progress of ongoing rulemaking, such harm is unlikely.

### B.  Harm to Defendants

The second factor is "the harm to the moving party if a stay does not issue." Ctr. for Biological Diversity, 419 F. Supp. 3d at 20.  Defendants argue that they will suffer "hardship" because EPA will be forced to divert resources away from rulemaking—including with respect to the proposed rule at issue here—toward litigation if it is forced to continue litigating this case. Mot. to Stay at 7–8.  Plaintiffs counter that "the 'burden of litigation is wholly insufficient to warrant a stay.'" Opp'n at 13 (quoting Asylumworks, 2021 WL 2227335, at *6); see also Ctr. for Biological Diversity, 419 F. Supp. 3d at 21 ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity." (internal quotation marks omitted)).[5]

The Court agrees with plaintiffs that being forced to divert resources to litigation is alone insufficient to show hardship.  However, it is not irrelevant here: as Turk describes, the relevant section of EPA has three full-time employees, whose time would inevitably be split between the rulemaking at hand and this litigation given that the next year would feature summary judgment briefing if the case proceeds.  See Turk Decl. ¶ 5.  While not a "hardship," such outcome would

---

[4] Plaintiffs argue that even if the rule is promulgated as expected, it will not "resolve" their claims, as the relief plaintiffs seek is a declaration that EPA is required to list PFAS in a way that does not subject them to the exemptions.  Opp'n at 10–11.  If EPA were to go through notice and comment rulemaking, as proposed, that would be a signal that EPA did not believe itself bound to that outcome.  Id.  While that may be the precise relief sought, the harm to plaintiffs does not come from the absence of a technical judicial order; it comes from the placement of PFAS in a section of the statute that permits facilities to take advantage of the exemptions.  EPA's proposed rule remedies that precise harm and would thus eliminate any tangible injury to plaintiffs, assuming the rulemaking process is completed as expected.

[5] Plaintiffs also argue that defendants request an indefinite stay, which is only justified when defendants can show a "pressing need." Landis, 299 U.S. at 255.  But defendants request a stay only until November 30, 2023—less than a year.  Regardless, the Court will only stay the case until July 31, 2023, at which point EPA should have sent the final rule to OMB for review.  See Turk Decl. ¶ 7(c).  Should the rule have changed in substance or the timeline have been extended, the Court will consider arguments at that time as to why the litigation should proceed.

certainly be inconsistent with plaintiffs' goal of changing the classification of PFAS to ensure their reporting is not subject to exemptions, and with the Court's goal of avoiding unnecessarily duplicative work.  See <u>Chinatown Serv. Ctr. v. U.S. Dep't of Health & Hum. Servs.</u>, Civ. A. No. 21-331 (JEB), 2021 WL 8316490, at *2 (D.D.C. Oct. 13, 2021) (noting that the government would be "freed from litigation burdens," if the case were stayed, allowing it to "focus on its proposed revisions to or replacement of the Rule").  Thus, this factor is neutral.

### C.  Judicial Economy

"[T]he Court has an interest in preventing . . . litigation that may otherwise cloud its docket and hamper judicial economy."  <u>Est. of Gaither ex rel. Gaither v. District of Columbia</u>, Civ. A. No. 03-1458 (CKK), 2005 WL 3272130, at *6 (D.D.C. Dec. 2, 2005).  If the proposed rule here is promulgated as expected, it will moot plaintiffs' claims.[6]  When an agency has a defined plan to promulgate a rule that would resolve the case and thereby save judicial resources, it is often proper for courts to stay proceedings while rulemaking proceeds.  See, e.g., <u>Nat'l Wildlife Fed'n v. EPA</u>, 925 F.2d 470, 472 (D.C. Cir. 1991) (noting that the "court granted EPA's request for a stay of proceedings . . . to allow it to complete a new rulemaking" and that "[t]he primary justification for granting the motion was conservation of judicial resources").

Plaintiffs filed an amended complaint on November 4, 2022, and thus the case is at its very beginning stages.  "It makes little sense for the Court to require the filing of the administrative record and merits briefs from both sides, and then to expend resources resolving legal issues that

---

[6] Plaintiffs argue that the proposed rulemaking "does not resolve a central legal issue"—whether EPA is permitted to list PFAS in a way that subjects them to the exemptions—and "there would thus be no duplication of effort" if the Court were to resolve that question.  Opp'n at 15.  Rulemaking would, of course, not result in the precise legal holding plaintiffs seek, but it would give them their desired substantive outcome and moot the case.  See, e.g., <u>Chinatown Serv. Ctr.</u>, 2021 WL 8316490, at *2 (declining to continue litigation that would result in "a declaration of the 2020 Rule's unlawfulness" because the agency planned to "soon act to address [plaintiffs'] concerns" and the case would accordingly "likely be moot").  If EPA's rulemaking proceeds as expected, any effort by the parties and the Court would be wasted as the case would be moot "around the same time as [the Court] reaches a decision."  <u>Id.</u>

will likely be moot around the same time as it reaches a decision." <u>Chinatown Serv. Ctr.</u>, 2021 WL 8316490, at *2.  In light of the remote possibility of harm to plaintiffs, the Court will stay the case, which will conserve judicial resources and allow EPA to focus on finishing rulemaking that would efficiently provide plaintiffs with the outcome they seek.

*     *     *

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [17] defendants' motion to stay is **GRANTED**; it is further

**ORDERED** that [18] plaintiffs' motion to expedite consideration is **DENIED** as moot; it is further

**ORDERED** that this case is **STAYED** until July 31, 2023, at which point the parties shall advise the Court whether an extension of the stay until November 30, 2023 is warranted; and it is further

**ORDERED** that the parties shall submit joint status reports on February 28, 2023 and May 26, 2023 advising the Court of the status of EPA's rulemaking process.

**SO ORDERED.**

/s/

JOHN D. BATES
United States District Judge

Dated: <u>January 3, 2023</u>